(C.D. 2162)

CORNET STORES ET AL. *v.* UNITED STATES

United States Customs Court, First Division

(Decided April 4, 1960)

*Lawrence & Tuttle (Barnes, Richardson & Colburn* by *Edward N. Glad* of counsel) for the plaintiffs.

*George Cochran Doub*, Assistant Attorney General (*Sheila N. Ziff*, trial attorney), for the defendant.

Before OLIVER, MOLLISON, and WILSON, Judges

MOLLISON, Judge: The above-enumerated protests were consolidated for trial and disposition and have been limited to the items described on the invoices as "House Slippers," bearing the article numbers 13782 and 13783. Such merchandise was assessed with duty at the rate of 20 per centum ad valorem under the provision in paragraph 1530(e), Tariff Act of 1930, as modified by the Presidential proclamations relating to the General Agreement on Tariffs and Trade, T.D. 51802 and T.D. 51898, for "footwear * * * the uppers of which are composed wholly or in chief value of wool, * * * with soles composed wholly or in chief value of leather."

The protest claim in each case is for duty at the rate of 10 per centum ad valorem under the provision in the same subparagraph, as modified by T.D. 51802, for "Slippers for housewear."

The evidence, including a stipulation of fact, offered at the trial of the issue, establishes that the articles at bar (a representative sample of which is before us as plaintiffs' illustrative exhibit 1) actually consist of slippers for housewear, the uppers of which are composed wholly or in chief value of wool, with soles composed wholly or in chief value of leather, the entire article in each case being in chief value of leather.

Plaintiffs contend that the issue is one of relative specificity and that the designation "slippers for housewear," being an *eo nomine* designation by use, and one which more narrowly describes a kind of footwear, takes precedence over the more general designation "footwear," citing as authorities the cases of *R. W. Smith* v. *United States*, 41 Cust. Ct. 78, C.D. 2024; *Jack and Jill Togs, Inc.* v.

*United States (W. T. Grant Co., Party in Interest)*, 42 Cust. Ct. 232, C.D. 2092; and *General Chain & Belt Co.* v. *United States* 46 C.C.P.A. (Customs) 66, C.A.D. 698. Each of the cases cited relates to the issue of relative specificity and the controlling effect of tariff designations by use over *eo nomine* designations.

In the brief filed in its behalf, counsel for the defendant contends, however, that the rule of relative specificity, being a rule for the general construction of statutes, must yield to the legislative intent as manifested by the actual language of the statute, as originally enacted by Congress, by a consideration of the limitations imposed upon and intended by the trade agreement provisions by which the duties on the goods covered by the tariff act provision were modified, and by the legislative history of the provisions.

Citing the case of *United States* v. *Curley-Bates Co.*, 46 C.C.P.A. (Customs) 14, C.A.D. 688, and *United States* v. *Canadian National Railways*, 29 C.C.P.A. (Customs) 272, C.A.D. 202, for the ruling that trade agreement provisions do not change the *classification* of articles, but merely modify duties as to merchandise already comprehended by the designated tariff classification, counsel for the defendant points out that, as originally enacted and as in existence prior to the modification by T.D. 51802 and T.D. 51898, paragraph 1530(e), *supra*, covered two separate and distinct categories or classifications of footwear, to wit:

Boots, shoes, or other footwear (including athletic or sporting boots and shoes), made wholly or in chief value of leather, not specially provided for,

[and]

\* \* \* boots, shoes, or other footwear (including athletic or sporting boots and shoes), the uppers of which are composed wholly or in chief value of wool, cotton, ramie, animal hair, fiber, rayon or other synthetic textile, silk, or substitutes for any of the foregoing, whether or not the soles are composed of leather, wood, or other materials \* \* \*.

Counsel points out that in the modification of the duties provided by the subparagraph effected by T.D. 51802 and T.D. 51898, the distinction between the two classifications was carefully maintained, and that the modification of duties with respect to "slippers for housewear" was made only as to those slippers for housewear, which were classifiable under the first provision, and was not made as to those slippers for housewear, which were classifiable under the second classification.

The point made by counsel for the defendant is made more apparent by an examination of the provisions of schedule XX of the General Agreement on Tariffs and Trade, reported in T.D. 51802, which, in connection with the modifications of duty rates under paragraph 1530(e), reads as follows:

| Tariff Act of 1930, paragraph | Description of Products | Rate of Duty |
|---|---|---|
| 1530(e) | *Boots, shoes, or other footwear (including athletic or sporting boots and shoes), made wholly or in chief value of leather, not specially provided for:* <br> Sewed or stitched by the process or method known as McKay: <br> Skating boots and shoes, if attached to ice skates_____ <br> Other_____ <br> Made by the process or method known as welt_____ <br><br><br><br> Having molded soles laced to uppers_____ <br> *Slippers for housewear*_____ <br> Moccasins of the Indian handicraft type, having no line of demarcation between the soles and the uppers_____ <br> Other (except huaraches, turn or turned boots and shoes, and men's, youths', and boys' boots, shoes, or other footwear)____ | <br><br><br><br><br> 15% ad val. <br> 20% ad val. <br><br> 40¢ per pair, but not less than 5% nor more than 20% ad val. <br> 10% ad val. <br> 10% ad val. <br><br><br> 10% ad val. <br><br><br> 20% ad val. |
| 1530(e) | Boots, shoes, or other footwear (including athletic or sporting boots and shoes), the uppers of which are composed wholly or in chief value of wool, cotton, ramie, animal hair, fiber, rayon or other synthetic textile, silk, or substitutes for any of the foregoing; any of the foregoing with soles composed wholly or in chief value of leather_____ <br> [Italics added.] | <br><br><br><br><br><br><br> 20% ad val. |

It is manifest from the above that the only slippers for housewear upon which a modification in rate of duty was effected were those which, prior to and under the provisions of the general agreement, took classification under the tariff provision for—

Boots, shoes, or other footwear (including athletic or sporting boots and shoes), made wholly or in chief value of leather, not specially provided for.

An examination of the legislative history of the provisions, and of their judicial interpretation, corroborates this view.

In paragraph 1405 of the dutiable schedule of the Tariff Act of 1922, there was a provision for—

Boots, shoes, or other footwear, the uppers of which are composed wholly or in chief value of wool, cotton, ramie, animal hair, fiber, or silk, or substitutes for any of the foregoing, whether or not the soles are composed of leather, wood, or other material,

and, in paragraph 1607 of the free list of the same act, there was a provision for—

Boots and shoes made wholly or in chief value of leather.

In *Golo Slipper Co.* v. *United States*, 43 Treas. Dec. 427, T.D. 39622, it was held by the predecessor of this court that shoes, the uppers of which were composed wholly or in chief value of camel's hair, wool, cotton, or silk, and the soles of leather, leather being the component material of chief value of the entire shoes (which is substantially the situation of the slippers at bar), were more properly classifiable under paragraph 1405 than paragraph 1607, the former being considered the narrower and more specific provision. The decision in that case was called to the attention of Congress at the time the revision of the Tariff Act of 1922 was under consideration. See schedule 14, page 1905, Summary of Tariff Information, 1929. See, also, to the same effect, *Wing Chin & Co.* v. *United States*, 70 Treas. Dec. 762, T.D. 48665.

The legislative history of paragraph 1530(e) of the present act, its language, as originally enacted, and the manner in which the modification of the duties was set forth in the General Agreement on Tariffs and Trade, *supra*, all evince a legislative plan or arrangement providing for specific classification of footwear, with uppers composed of certain materials, separate and apart from the more general provision for footwear, made wholly or in chief value of leather.

The rule of relative specificity, the application of which is here contended for by the plaintiffs, is a rule of statutory construction employed by the courts to arrive at the legislative intent. It must yield if the legislative intent, ascertained by other means, is shown to be counter to the apparent intent indicated by the rule. *United States* v. *Clay Adams Co., Inc.*, 20 C.C.P.A. (Customs) 285, 288, T.D. 46078.

We are satisfied that the correct classification of the slippers in this case was that adopted by the collector. The claims made in each of the protests are overruled, and judgment will issue accordingly.